Good morning. May it please the Court, my name is Cori Hong and I represent Petitioner Dorna Miller. There are three reasons why the BIA erred. First, the reinstatement statute provides in relevant part that, quote, a removal order is reinstated from its original date and is not subject to being reopened or reviewed, unquote. The government claims that it is plain and obvious that this language then bars any subsequent due process challenge to a removal order. But no case supports that interpretation. Rather, in this circuit, Villa-Anguiano, this Court noticed that the reinstatement process is discretionary. Even when all three factors are met, there is no duty or requirement for an ICE officer to reinstate proceedings. Even more important, this Court held that the language in the reinstatement statute only bars relitigating the merits of the removal order. Applied to Villa-Anguiano, a noncitizen then successfully defeated his illegal reentry criminal charge by proving that his removal order had a constitutional defect, which was that he did not have notice of a potential 212C remedy. But despite prevailing in criminal court, the DHS reinstated the very removal order that the district court had found defective. Because the constitutional infirmities to removal order cannot then let the agency reinstate it, this Court vacated the reinstatement order and remanded proceedings to ICE to decide what to do. In the Sixth Circuit, Villegas de La Paz. Your client didn't challenge in the criminal proceeding, though, right? She did not, but she was not required to. And what this case shows that even if she had, it would not successfully collaterally attack the order. It still remained in full force, which is why it was allowed to be reinstated in that case. Now, in the Sixth Circuit, Villegas de La Paz also considered, but rejected on the merits, a constitutional challenge to the underlying removal order that had been reinstated. The broad language in the reinstatement statute then does not foreclose claims that the underlying removal order is constitutionally defective. Now, second, the BIA cited to Morales Izquierdo for the claim that the reinstatement process divests the immigration court of any authority to rescind an in absentia order. But that is not what Morales Izquierdo holds. To the contrary, in footnote 13, the court explains in dicta that even in the reinstatement context, the rescission statute permits an attack on an in absentia order. Can I ask you a question? You're relying on the language in, what is it, B5C2, that says at any time. Is that literally any time, like your client could wait for 10 more years and then decide to bring this motion to reopen? Yes, it has never been challenged. In this case, though, she brought it 75 days after she actually got notice. So even though any time is broad. When she reentered the United States, when? I believe it was 2013. Okay, and then presumably became aware immediately that she had been ordered removed, right? Well, she was then immediately subjected to the criminal proceedings in the 1326 context. Right, on the basis of having been ordered removed and having returned. So that was in 2013. So when did she file the motion? Well, so then she found counsel, and then within 75 days, I'm not sure. I can double check the record. It was either 75 days after the conviction was imposed or after receiving notice. But it was sometime after she became aware that she had been ordered removed, and, you know, on her account, not having received notice. So that's why it just seemed like there was a long delay before she took any action. As Judge Friedland pointed out, even for, you know, didn't pursue an opportunity in the criminal proceeding to raise this. So I just, it seems odd to have this indefinite time span in which you can just pop up and say, you know what, as a matter of fact, I never got notice. Well, it's your position that she was timely. But even if she were not, it's your position, if I understand it, that at any time means at any time. It's three simple English words whose definition is not really ambiguous. Absolutely. And for her case, it was a matter of weeks or months after getting notice, which is reasonable under the circumstances. But was it weeks or months after getting notice or weeks or months after the conviction? Because that's pretty different. She had notice as soon as the criminal proceedings began, right? Well, she did have notice. That was the first time she learned of the reinstatement process, correct. But even so, the statute does not qualify it within even a reasonable time like it does in other parts. It says at any time, just like the sua sponte authority, to reopen a proceeding in discretion of the BIA. What's noticeable is that the BIA did not deny it on that basis, that it was a lack of diligence. Rather, they denied it because they said they didn't have jurisdiction to hear it. In terms of the relief you are seeking from us, I gather it's just to send it back to the BIA and say, no, you do have jurisdiction, now consider this on the merits? Absolutely. Okay. And that's exactly, that's all that's being requested. That is the proper remedy that was in Dobrota and Velez Escobar, where there was an in absentia order, where the remedy was to remand it to the court. And also even in the Villa Anguiano, it was still remanded because the DHS still has jurisdiction then to decide whether to pursue removal proceedings or adjudicate. You're not asking us to review any of the merits then. You just want us to say the BIA has jurisdiction. Correct. So this issue of timeliness would be one that the BIA could consider. Absolutely. And it could make its decision or it could construe the statute as it so deems. But right now the only thing that we're looking for is for a clear holding that a constitutional claim remains valid in reinstatement. Just out of curiosity, so what would happen on remand to the BIA? Let's assume that they said, okay, fine, we have jurisdiction. What relief could they grant at this point? Well, at this point it would be the Dobrota and the Velez Escobar, where in those situations just evidence that the government sent the notices either to the wrong address or there was a failure to receive, that was enough to rescind the removal order. Here we have more than that, where we actually from the FOIA, we have three letters that were sent by the immigration court and returned unopened to the immigration court. So the court had noticed that the documents had not been received. So that is adequate evidence then that the BIA should then reopen and rescind the removal order. That's what I was trying to figure out. So even though your client actually has already been convicted of an offense that's predicated on this removal order, the BIA could nonetheless rescind it at this point? Absolutely. And then she could later bring a collateral attack against that criminal issue, but she would have to do that after that's fully vacated. But for her, the remedy that she wants is an ability to seek for asylum because of the situation that happened to her, that she needs that protection to give for herself, to get a green card, to give status to her husband and give status to her daughter. So her immediate interest, she doesn't care about the felony conviction, but having an opportunity to get the asylum and the benefits that are only available through that remedy. Got it. And then, so with Morell's, as Chiaro again, footnote 13 explains that this is available. And so the fatal flaw in the BIA's decision is that it assumed that the limitations on challenging reinstatement orders become limitations on challenges to the underlying removal orders. Now, in 1996, Congress made the policy decision that when expanding the reinstatement procedures to prioritize speed, for those who have a prior removal order, the DHS may rapidly remove them out of the country. But for people like Ms. Miller, who claim that their first removal hearings were not full or fair, letting them have a day in court is not inconsistent with the post-1996 pursuit of speed for those with valid removal orders. So recognizing that those... You can't really get that from reading the two statutes together, can you? I mean, the later statute is the one that says you have no avenue. So usually we read the later statute to trump the earlier statute, don't we? Well, there's a question of the time, because the reinstatement started in 1950s, but it only applied to those who were considered subversives. In 1996, they expanded the reinstatement, but as Villa-Anguiano said, that if you read this as a whole, it's a directive to the ICE officer, not to consider any merits or any relitigation at that time that it's reinstating the procedure. There's nothing there that has expressed language that it's intended to bar and foreclose all avenues of relief. When we read a later statute as trumping an earlier statute, it's when they're directly in point, usually. But we don't usually infer implied repeal of a very specific provision from a more general provision that comes later, do we? Yes, you're correct, Your Honor. And also, this is in the Cordova, in the Seventh Circuit case. They actually cited to Villas de la Paz and the Tenth Circuit, Fifth Circuit, and Third Circuit that have agreed that constitutional claims remain valid in the reinstatement process. But, well, why do you think she has a constitutional claim, though, as opposed to just a statutory claim under the provision that says you can reopen if you didn't have notice? Well, the rescission notice is a very unique one, where basically it's codifying the due process protections of notice. It's unique that the statute clearly provides for that. And so whether it's decided by statutory merits or the due process, you get the same results. Okay. Let me suggest that you stop there, and I'll give you a minute for rebuttal. You're over your time. Thank you. We'll hear from the government now. Good morning. May it please the Court, Amy Carmichael for the government. The sole question before this Court is whether the agency correctly determined that it lacked jurisdiction over the petitioner's motion to reopen. I'd like to start out by pointing out that this isn't actually a notice case, because she didn't actually make notice arguments before the Board. Before the immigration judge and the Board, her argument was premised instead on the 180-day rule for in absentia reopening. In absentia reopening is permitted. There's two different procedures for reopening an in absentia removal order. The first is where there's exceptional circumstances, and that motion is allowed within 180 days of the in absentia removal order. That was the basis that she argued before the immigration judge and that she argued before the Board. She argued that her – that she experienced ineffective assistance of counsel and that the ineffective assistance of counsel was an exceptional circumstance that excused her failure to appear. She did not argue notice. I thought she had argued both. So you'll have to help me then. There's – there's – so notice has a whole set of rules that go with it. It's actually – the lack of actual notice is actually not sufficient to reopen for lack of notice. The alien has to demonstrate not only that she did not receive notice, but that she didn't receive notice notwithstanding the fact that she otherwise complied with the statute. Here we have evidence in the record that – that they sent the notices to her address of record. If she – but she doesn't – she offers no explanation in any of her briefing or in her affidavit as to why she did not receive those notices that were sent to the correct address. Well, assuming that she had raised notice – I know you – your first argument is she did not. Yes. But assuming that she had, then why – since the statute says that she can raise that at any time, why do you think the later statute in any way repeals that? The – so the reinstatement statute says explicitly that the underlying order cannot be reopened or reviewed. That doesn't make any sense when there's not notice. That – it's sort of a catch-22. The first statute says – the first section says you can always challenge when you didn't have notice, and basically that has constitutional implications. You can't have something happen to you that you never had notice of and never had a chance to reject. So the second statute – the second section says, of course, if you have a notice and there's a removal order, and then instead of finding further the removal order, you run away and come back, the removal order gets reinstated. And that makes perfect sense if it's a removal order of which you had notice. But if it was a removal order of which you didn't have notice, you're just visiting another country, you come back and – or you go to another country to seek asylum, as in this case, you come back. You never had notice at any time, assuming that you didn't have notice, which is the factual issue. I have several responses to that, Your Honor. To start with, this is a somewhat unusual case because she's self-deported. In the ordinary case, the alien is going to have notice that there is an order – ICE issues a bag and baggage letter and picks him up to remove him. At that point, he's going to find out for sure that there is an order against him. And, in fact, the regulation contemplates this circumstance by stating that any order of – any inabstantial order of removal is automatically stayed upon the filing of a motion to reopen. So in that circumstance, what ordinarily happens is the alien says, oh, oh, my gosh, I didn't even know that there was a notice against me, and here ICE is at my door. They file a motion to reopen, seeking to reopen the inabstantial removal order, and that motion has to be adjudicated before ICE can then remove them. Another part of this is – But that's not her case, right? Right, that's not – So what about her case where she says she didn't have notice? In her case, there's a few other protections that are already built into the statute. The first is the reinstatement process itself. DHS is required to first give her notice that they are reinstating her prior order, and then they are required to give her an opportunity to respond, and they have to consider any response that she gives. Now, her response can be, I didn't know that there was a prior order of removal, and DHS has to take that into consideration. And, in fact, the Villa-Aguillano case states that where DHS doesn't take an underlying due process concern into consideration, it was error for them to reinstate the prior order. That didn't happen here because she didn't raise those challenges, either in criminal court or during the reinstatement process. Additionally, even if never – even if – Are you saying – let me make – I'm sure I understand what you're saying. Assuming that she raised notice properly here, so it's – that question is before us. Assuming that she didn't have notice until the events occurred that you're just referring to, are you saying that the at-any-time language doesn't mean at any time? The at-any-time means up until the order is actually reinstated. I think it's also worth pointing out – Because you think the later statute trumps the earlier one. Correct. So how do you respond to Judge Rakoff's earlier question about which statute is more specific? Is one of these more specific? Yes, because the – the reinstatement statute says that reopening – that you cannot reopen the underlying order. Now, the at-any-time statute is not absolute in that way. There are other restrictions upon that. But why isn't it more specific to talk about a removal order that you didn't have notice of than just to talk about removal orders generally? So when enacting – Congress was seeking a particular goal when enacting the reinstatement provision, and one of the goals of that was to reduce the amount of people who are coming in illegally and to reduce the – the types of relief, including motions to reopen, that were available to people who chose to reenter the country after a removal order. The – So say we agree with you, but what do we do with Morales-Escuero, then? Are we bound by the footnote that seems to disagree that that's how you reconcile these statutes? So the footnote that they rely very heavily on ignores the text that it is attached to. But that doesn't matter for us as a three-judge panel, does it? I mean, we might think you're right, but we're bound by what our court has said. Well, so what the text that that footnote is attached to says is the reinstatement statute specifically precludes Morales from seeking to reopen the previous removal order based on defective service or any other ground. Right. But that statement is talking about in the reinstatement proceedings themselves. So that's right. She couldn't, in the reinstatement proceedings themselves, litigate this question of adequate notice. But that's why the footnote is important. It's – I think you're ignoring the context in which that statement in text is made. The – throughout Morales-Escuero, the court talks about the fact that the – that Alien is not precluded from filing a motion to reopen. They just have to do it from abroad. And if the Alien chooses to enter – But how could she have done it from abroad? She didn't know there was one to reopen yet. Well, again, I think that – I think that this is where she has the obligation to raise that in reinstatement proceedings, which she did not do. But isn't that something the agency could decide? So, I mean, that might be an argument you could make before the BIA, when they have jurisdiction over this question. I'm not sure why we have to sort that out. I think that that – I think that you're making an excellent point, actually, that this is actually a Chevron question, and the agency should be deciding this in the first instance, which they did not do here because she did not – the question of, well, we have these two provisions. One says at any time. One says not at all. Which one prevails? That's really a question for the board to consider. The board didn't have that question in front of it because she did not base her motion on notice. She based it on the 180-day provision, which is – I'll just say really quickly that the regulation states that you – the regulation states – keeps the 180-day rule and the notice rule in the same paragraph and states that you're only allowed to file one motion under that paragraph because presumably if you have notice in order to file the 180-day motion, you can also file your notice motion. So that at any time is subject to other types of limitations, whereas the reinstatement provision is not subject to any limitations. As the Seventh Circuit found in Cordova-Soto, reopening is completely precluded by that statute, unless the Court has any further questions. Okay. Thank you. Let's put a minute on the clock for rebuttal. Thank you. I just have one point that she very much challenged to the BIA that she did not have notice of the first removal order. The opening brief, pages 19 to 24, cite everywhere in the record where she filed her motion to reopen, she supported it with records from the FOIA, both about the letters that were sent and returned, an address from the post office showing that this was a valid address, and a declaration that she herself had never received it. And if there's a legal question as to whether her showing was adequate or inadequate, that would not deprive the BIA of jurisdiction. That would simply be another issue they would have to decide. Yes? Absolutely. That would be a question of the merits. Did she meet the bars for the inocentia of reopening or not? I think the government counsel was arguing that you haven't exhausted this particular argument. That's what I understood her to say. But you're saying that we'll check the brief, that you or your client filed before the BIA, and there will be an argument based on B5C2? C2. Great. And if you want, I can file a supplemental briefing with the citations. No, no. You can check that. Okay. Thank you very much. Thank you. The case you just argued will be submitted. We'll, as I said, take a brief pause so that our student guests can exit if they'd like.
judges: Watford, Friedland, Rakoff